LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and FLSA Collective Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WILLIAM ANDERSON and SIXTO RAMIREZ
on behalf of themselves,
FLSA Collective Plaintiffs and the Class,

        Plaintiffs,

    v.

GOLDEN KRUST FRANCHISING, INC.,
GOLDEN KRUST CARIBBEAN
    BAKERY & GRILL INC.,
GOLDEN KRUST CARIBBEAN BAKERY INC.,
LOWELL HAWTHORNE,
LEROY HAWTHORNE,
HAYWOOD HAWTHORNE,
LORNA HAWTHORNE,
HERMA HAWTHORNE, and COREY ROACH,

        Defendants.

---

Case No.:

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, WILLIAM ANDERSON and SIXTO RAMIREZ, (hereinafter, "Plaintiffs"), on

behalf of themselves and others similarly situated, by and through their undersigned attorneys,

hereby file this Class and Collective Action Complaint against Defendants, GOLDEN KRUST

FRANCHISING, INC., GOLDEN KRUST CARIBBEAN BAKERY & GRILL INC., GOLDEN

KRUST   CARIBBEAN   BAKERY   INC.,   LOWELL   HAWTHORNE,   HAYWOOD
HAWTHORNE, LORNA HAWTHORNE, HERMA HAWTHORNE and COREY ROACH
(each individually, "Defendant" or, collectively, "Defendants"), and state as follows:

## INTRODUCTION

1.  Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid wages due to a policy of timeshaving, (3) unpaid uniform expenses, (4) unlawfully withheld gratuities, (5) liquidated damages and (6) attorneys' fees and costs.

2.  Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid wages due to a policy of timeshaving, (3) unpaid uniform expenses, (4) unlawfully withheld gratuities, (5) liquidated damages and (6) attorneys' fees and costs.

3.  Plaintiffs further allege, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII"), they are entitled to recover from Defendants for discrimination based on race: (1) back pay, (2) compensatory damages for emotional distress, (3) punitive damages and (4) attorneys' fees and costs.

4.  Plaintiffs further alleges that, pursuant to the New York State Human Rights Law, ("NYSHRL"), they are entitled to recover from Defendants for discrimination on the basis of race: (1) back pay, (2) compensatory damages for emotional distress, (3) compensatory damages, (4) damages for retaliation and (5) attorneys' fees and costs.

5.  Plaintiffs further allege that, pursuant to the New York City Human Rights Law, ("NYCHRL"), they are entitled to recover from Defendants for discrimination based on race: (1)

back pay, (2) compensatory damages for emotional distress, (3) compensatory damages, (4) damages for retaliation and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims of Plaintiffs and FLSA Collective Plaintiffs pursuant to 28 U.S.C. §1367.

7. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8. Plaintiff, WILLIAM ANDERSON, is a resident of Kings County, New York.

9. Plaintiff, SIXTO RAMIREZ, is a resident New York County, New York.

10. Corporate Defendant, GOLDEN KRUST FRANCHISING, INC., is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 21 Flatbush Ave., Brooklyn, NY, 11233 and an address for service of process located at 3958 Park Ave., Bronx, NY, 10457.

11. Corporate Defendant, GOLDEN KRUST CARIBBEAN GRILL & BAKERY INC., is a domestic limited liability company organized under the laws of the State of New York with a principal place of business and address for service of process located at 2846 Church Avenue, Brooklyn NY 11226.

12. Corporate Defendant, GOLDEN KRUST CARIBBEAN BAKERY INC., is a domestic limited liability company organized under the laws of New York with a principal place of business and an address for service of process located at 3958 Park Ave., Bronx, NY, 10457.

13. Individual Defendant, LOWELL HAWTHORNE, is the Chief Executive Officer and Owner of Corporate Defendants, GOLDEN KRUST FRANCHISING, INC., GOLDEN KRUST

3

CARIBBEAN BAKERY INC., and GOLDEN KRUST CARIBBEAN GRILL & BAKERY INC.

14. Individual Defendant, HAYWOOD HAWTHORNE, is the Vice President of Manufacturing and Information Technology of Corporate Defendants, GOLDEN KRUST FRANCHISING, INC., GOLDEN KRUST CARIBBEAN BAKERY INC., and GOLDEN KRUST CARIBBEAN GRILL & BAKERY INC.

15. Individual Defendant, LORNA HAWTHORNE, is the Human Resources Director of Corporate Defendants, GOLDEN KRUST FRANCHISING, INC., GOLDEN KRUST CARIBBEAN BAKERY INC., and GOLDEN KRUST CARIBBEAN GRILL & BAKERY INC.

16. Individual Defendant, HERMA HAWTHORNE, is the Chief Executive Officer and Owner of Corporate Defendants, GOLDEN KRUST FRANCHISING, INC., GOLDEN KRUST CARIBBEAN BAKERY INC., and GOLDEN KRUST CARIBBEAN GRILL & BAKERY INC

17. Individual Defendant, COREY ROACH, is a franchisee of GOLDEN KRUST FRANCHISING, INC., and owner of the franchise location that employed Plaintiff, WILLIAM ANDERSON.

### The Golden Krust Franchise

18. At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

19. Additionally, Corporate Defendants GOLDEN KRUST CARIBBEAN BAKERY INC., and GOLDEN KRUST FRANCHISING, INC. share a common address for service of process at 3958 Park Ave., Bronx, NY, 10457.

20. Defendant LOWELL HAWTHORNE opened the first "Golden Krust" restaurant on Gun Hill Road in Bronx County, New York in 1989. Defendants began franchising the brand in 1997.

21. Defendants' food service enterprise includes 69 (or more) Golden Krust restaurants in the state of New York, as well as locations in many other metro areas throughout the United States. Employees were freely interchangeable among 69 (or more) Golden Krust restaurants in New York City. *See* attached **EXHIBIT A**. The various stores were marketed as one common enterprise. All employees were paid by the same payroll methods, and checks were paid by the same corporate entities. All employees are placed and promoted along the same career ladder, starting with "chefs" and "cooks" who are paid hourly wages, to "general managers" and "franchisees", who may be paid fixed salaries.

22. Individual Defendant LOWELL HAWTHORNE is the Owner and Chief Executive Officer of Corporate Defendants GOLDEN KRUST FRANCHISING, INC., GOLDEN KRUST CARIBBEAN BAKERY & GRILL INC. and GOLDEN KRUST CARIBBEAN BAKERY INC. LOWELL HAWTHORNE has an ownership interest in multiple Golden Krust locations, including the location where Plaintiff worked.

23. By and through the Corporate Defendants, Individual Defendants, LOWELL HAWTHORNE, HAYWOOD HAWTHORNE, LORNA HAWTHORNE and HERMA HAWTHORNE function as franchisors. Each Franchisor Individual Defendant maintains an element of control over the practices and policies of franchisees operating restaurants under the "Golden Krust" name brand.

24. Individual Defendant, COREY ROACH, is a Golden Krust franchisee.

25. Franchisor Individual Defendants require all Franchisee Individual Defendants to attend a three-week brand training program at Golden Krust's corporate headquarters.

26. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

27. Each of the Franchisor Individual Defendants exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and Class members by creating, amending and implementing management and operation policies and practices that are to be followed in all of the Golden Krust locations, including company-owned locations and franchisee locations. Along with the franchisee owners of individual Golden Krust locations, each of the Franchisor Individual Defendants exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class at the Golden Krust locations, including company-owned locations and franchisee locations.

28. Each of the Franchisor Individual Defendants additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and Class members. Each of them exercises functional control over the business and financial operations of the Golden Krust locations, including company-owned locations and franchisee locations. They each ensure that managers and employees are properly trained, that the quality of the food at each location meet their standards, and that employees effectively serve and cater to customers to ensure that each of the Golden Krust locations is operating efficiently and profitably.

29. Each of the Franchisor Individual Defendants makes regular announced and unannounced visits to each of the Golden Krust locations. They each possess and exercise the authority to make changes in the policies and practices at each Golden Krust location to ensure that the franchisor's standards and policies are being followed. Employees could complain to each of the Franchisor Individual Defendants directly regarding any of the terms of their employment, and they each would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

30. Franchisee Individual Defendant, COREY ROACH has operation control over the terms and conditions of the employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. He has and continues to maintain the authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. Moreover, as a franchisee of Golden Krust, COREY ROACH has and continues to have the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members.

31. Defendants operate a chain of restaurants (herein, collectively "Golden Krust") under the trade name "Golden Krust." Courts in the Second Circuit routinely find employers of one establishment, including those in chains and franchises, jointly liable for wage and hour violations at other establishments if the separate establishments operate as a single integrated enterprise, where restaurants are engaged in related activities, share common control and have a common business purpose. In *Lin v. Benihana National Corp.*, plaintiffs worked at the same "Benihana" franchise location but the Court did not dismiss the other franchisor defendants or franchisee defendants even though they did not directly employ plaintiffs, permitting plaintiffs to

move for class certification to recover unpaid wages upon a showing of single integrated enterprise. No. 10 Civ. 1335 (S.D.N.Y. 2010). In *Garcia v. Chipotle Mexican Grill, Inc.*, plaintiff worked at five Chipotle locations in New York City and the Court granted city-wide collective certification upon a showing of a common policy that violated the law. No. 16 Civ. 601 (S.D.N.Y., Nov. 4, 2016

32. Each of the Individual Defendants listed had control over the terms and conditions of Plaintiffs' employment, and those of similarly situated employees. Specifically, with respect to Plaintiffs and other similarly situated employees, Individual Defendants maintained the authority to (i) fire and hire, (ii) determine rate and method of pay (iii) adjust employee work schedules, (iv) maintain employees' employment records and (v) otherwise affect the quality of employment of Plaintiffs, the FLSA Collective Plaintiffs and the Class members.  Moreover, Individual Defendants exercised functional control over the business and financial operations of the Corporate Defendants.

33. Here, each franchise restaurant operates as a single integrated enterprise. The Golden Krust restaurants are engaged in related activities through their joint advertising on the Golden Krust website, located at www.goldenkrustbakery.com and their Facebook website, located at https://www.facebook.com/GoldenKrustBakery. The Golden Krust restaurants are commonly owned through the concerted control of the franchisors. Moreover, the Golden Krust restaurants exert common control through their centralized career opportunity website, located at http://www.goldenkrustbakery.com/content/index.php?do=careers&sect=currentOpenings.

Lastly, the Golden Krust restaurants serve a common business purpose and are engaged in the same business activities of serving Jamaican patties and Caribbean cuisine to customers and patrons. The Golden Krust restaurants also operate under the same trade name, the same logo,

8

and with the same menu. Employees and food items are also freely transferable among the various Golden Krust locations.

34. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

35. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

36. At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, proper wages earned due to a policy of time-shaving, appropriate uniform expenses, and all gratuities earned. Additionally, Defendants subjected Plaintiffs, FLSA Collective Plaintiffs and members of the Class to violations of their civil rights as stipulated by Title VII of the Civil Rights Act of 1964, the NYSHRL, and the NYCHRL . The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs and Class members.

## FLSA COLLECTIVE ACTION ALLEGATIONS

37. Plaintiffs brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (chefs, cooks, bakers, prep

bakers, team members and cashiers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

38. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) all overtime premium owed under the FLSA, (ii) all wages earned due to a policy of time-shaving, (iii) uniform expenses, (iv) an appropriate share of gratuities. Defendants also subjected Plaintiffs to civil rights violations to which Plaintiffs are due compensation.  The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

39. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

40. Plaintiffs bring claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees with job titles including, but not limited to "chef", "cook", "baker", "prep baker", "team member" or "cashier" who were unjustly compensated, throughout the State of New York, on or after the date that is six years before the

filing of the Complaint in this case as defined herein (the "Class Period").

41. All said persons, are referred to herein as the "New York Class Members." The class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

42. The proposed New York Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants and there are more than forty (40) members of the Class.

43. Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation, (ii) failing to pay all wages earned due to a policy of time-shaving, (iii) failing to pay uniform expenses, (iv) failing to pay the proper amount of gratuities, (v) failing to provide proper wage statements to Class members as required under the New York Labor Law, (v) failing to provide proper wage and hour notices to Class members per requirements of the New York Labor Law and (vi) subjecting Plaintiffs to civil right violations pursuant to Title VII, the NYSHRA and the NYCHRA. Defendants' corporate-wide policies and practices affected all Class members

similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

44. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

45. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class

members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

46. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Both current and former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

47. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d) Whether Defendants failed to properly compensate Plaintiffs and Class members for overtime under state and federal law for all hours worked over 40 per workweek;

e) Whether Defendants failed to properly compensate Plaintiffs and Class members due to a policy of time-shaving;

f) Whether Defendants failed to properly compensate Plaintiffs and Class members for uniform expenses;

g) Whether Defendants failed to compensate Plaintiffs and Class members an appropriate share of gratuities; m

h) Whether Defendants provided to Plaintiffs and Class members proper wage and hour notice, at date of hiring and annually, per requirements of the New York Labor Law; and

i) Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages as required by New York Labor Law.

## STATEMENT OF FACTS

### *William Anderson*

48. On or about March 25, 2016, Plaintiff, WILLIAM ANDERSON, was hired by Defendants and/or their predecessors, as applicable, to work as a prep baker for Defendants' restaurant located at 21 Flatbush Avenue, Brooklyn, NY 11233.

49. WILLIAM ANDERSON worked for Defendants until on or about August 1, 2017.

50. During the employment of Plaintiff, WILLIAM ANDERSON, by Defendants, he worked over forty (40) hours per week.

51. Specifically, from on or about March 25, 2016 until on or about December 1, 2016, WILLIAM ANDERSON worked 5 days a week for 8.5 hours per day. During this period, WILLIAM ANDERSON received compensation at an hourly rate of $10.50.

52. On or about December 2, 2016, WILLIAM ANDERSON's hours were significantly cut back. He began working 3 days per week for 8.5 hours per day. From on or about December 2, 2016 until on or about December 31, WILLIAM ANDERSON continued to be paid at an hourly rate of $10.50.

53. On or about January 1, 2017, WILLIAM ANDERSON received a raise from an hourly rate of $10.50 to an hourly rate of $12.00. WILLIAM ANDERSON continued to work 3 days per week for 8.5 hours per day until on or about August 1, 2017.

54. At all relevant times, Defendants would deduct 30 minutes per day from WILLIAM ANDERSON's paychecks to account for a daily lunch break. However, the allotted lunch breaks usually fell during lunch-rush hours when the restaurant was too busy for employees to take their break. Accordingly, WILLIAM ANDERSON usually worked straight through his allotted break without being properly compensated.

55. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs and Class members an overtime rate of time and one-half as required by both the FLSA and the New York Labor Law.

56. Defendants knowingly and willfully mandated Plaintiffs, FLSA Collective Plaintiffs and Class members to wash their own uniforms without providing compensation. During the course of WILLIAM ANDERSON's employment with Defendants, he incurred costs of $10.00 per week washing and drying his mandated uniform.

57. Defendants knowingly and willfully misappropriated tips due to Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendants, maintained a tip jar at the franchise located at 21 Flatbush Ave., Brooklyn, NY, 11233, but Plaintiffs, FLSA Collective Plaintiffs and Class members never received any of the tips that accumulated therein. Defendants' failed to: (i)

maintain records of tips earned by employees and (ii) maintain a proper tip pool because management participated in the tip pool.

58. During the course of Plaintiff WILLIAM ANDERSON's employment with Defendants', he was repeatedly discriminated against on a racial basis. WILLIAM ANDERSON suffered racial discrimination in the following contexts; (i) he received a dramatic cut in hours while all Jamaican workers received full-time hours; (ii) he received a significantly smaller Christmas bonus that all Jamaican workers; and (iii) he was responsible for significantly more tasks than Jamaican workers while he was working.

### *Sixto Ramirez*

59. In or about December 2014, Plaintiff, SIXTO RAMIREZ, was hired by Defendants and/or their predecessors, as applicable, to work as a maintenance porter for Defendants' food manufacturing facility located at 3958 Park Ave., Bronx, NY, 10457.

60. SIXTO RAMIREZ worked for Defendants until in or about March 2015.

61. During the employment of Plaintiff, SIXTO RAMIREZ, by Defendants, he worked over forty (40) hours per week.

62. Specifically, SIXTO RAMIREZ worked 6 days per week from 3 p.m. to 11 p.m. for a total of 48 hours per week.

63. From in or about December 2014 until on or about December 31, 2014, Plaintiff, SIXTO RAMIREZ received compensation at the rate of $8.00 per hour.

64. From on or about January 1, 2015, until the termination of his employment in or about March 2015, Plaintiff, SIXTO RAMIREZ received compensation at the rate of $8.50 per hour.

16

65. Despite working regularly in excess of 40 hours per week, at no time during the period of his employment was Plaintiff, SIXTO RAMIREZ, paid overtime at the rate of one and one-half his regular hourly wage.

66. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

67. Plaintiffs reallege and reaver Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

69. At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

70. At all relevant times, Defendant, GOLDEN KRUST FRANCHISING, INC., had gross revenues in excess of $500,000.

71. At all relevant times, Defendant, GOLDEN KRUST CARIBBEAN BAKERY & GRILL INC., had revenues in excess of $500,000.

72. At all relevant times, Defendant, GOLDEN KRUST CARIBBEAN BAKERY INC., had gross revenues in excess of $500,000.

73. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs, FLSA Collective Plaintiffs and the Class for their hours worked in excess of forty hours per workweek.

74. At all relevant times, Defendants had a policy of time-shaving and refusing to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked.

75. At all relevant times, Defendants had a policy of misappropriating gratuities earned by Plaintiffs, FLSA Collective Plaintiffs and Class members.

76. At all relevant times, Defendants had a policy of mandating employees to wear uniforms, but did not reimburse Plaintiffs, FLSA Collective Plaintiffs or Class members for washing and maintaining their uniforms.

77. Defendants failed to properly disclose or apprise Plaintiffs, FLSA Collective Plaintiffs and the Class of their rights under the FLSA.

78. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs, FLSA Collective Plaintiffs and the Class suffered damages in an amount not presently ascertainable of unpaid overtime compensation, plus an equal amount as liquidated damages

79. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiffs and FLSA Collective Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

80. Defendants failed to properly disclose or apprise Plaintiffs, FLSA Collective Plaintiffs and the Class of their rights under the FLSA.

81. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

82. Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

83. Plaintiffs reallege and reaver Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84. At all relevant times, Plaintiffs were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

85. Defendants willfully violated Plaintiffs' rights under the New York Labor Law by failing to pay Plaintiffs overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

86. Defendants willfully violated Plaintiffs' rights under the New York Labor Law by failing to pay employees for all hours worked, due to a corporate-wide policy of time-shaving. .

87. Defendants willfully violated Plaintiffs' rights under the New York Labor Law by failing to compensate employees for the maintenance and upkeep of a mandated uniform.

88. Defendants willfully violated Plaintiffs' rights under the New York Labor Law by misappropriating gratuities from a tip jar, and failing to maintain records of tips.

89. Defendants knowingly and willfully operated their business with a policy of not providing a proper wage statement to Plaintiffs and other non-exempt employees, in violation of the New York Labor Law.

90. Defendants knowingly and willfully operated their business with a policy of not providing a proper wage notice to Plaintiffs and other non-exempt employees at the beginning of employment and annually thereafter, in violation of the New York Labor Law.

91. Due to the Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime, unpaid hours worked due to a policy of time-shaving, unpaid uniform maintenance expenses, unpaid share of gratuities, statutory penalties, damages for unreasonably delayed payments, reasonable attorneys' fees, and costs and disbursements of the action.

**COUNT III**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§**

**2000E *ET SEQ*.**

**(RACIAL DISCRIMINATION)**

92.    Plaintiffs reallege and reaver Paragraphs 1 through 90 of this Complaint as if fully set forth herein.

93.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000E, et seq., prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

94.    Plaintiff, WILLIAM ANDERSON, is an employee and a qualified person within the meaning of Title VII and Defendants are covered employers under Title VII of the Civil Rights Act of 1964.

95.    Defendants operated a business that discriminated against Plaintiff in violation of Title VII by subjecting Plaintiff to a hostile work environment, in the form of constant harassment and unequal treatment due to his race. Such discriminatory conduct by Defendants

ultimately led to WILLIAM ANDERSON's termination by Defendants.

96.    Due to Defendants' violations under Title VII of the Civil Rights Act of 1964, based on discrimination on the basis of race, Plaintiff is entitled to recover from Defendants: (1) back pay, (2) compensatory damages for emotional distress, (3) punitive damages, and (2) attorney's fees and costs.

**COUNT IV**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

**(RACIAL DISCRIMINATION)**

97. Plaintiffs reallege and reaver Paragraphs 1 through 96 of this Complaint as if fully set forth herein

98. Plaintiff, WILLIAM ANDERSON, realleges and reavers Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

99. The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

100.    Plaintiff is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

101.    Defendants operated a business that discriminated against Plaintiff, WILLIAM ANDERSON, in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of constant harassment and unequal treatment due to his race. Such discriminatory conduct by Defendants ultimately led to Plaintiff's termination by Defendants.

102.    Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of race, Plaintiff is entitled to recover from

Defendants: (1) compensatory damages and (2) damages for retaliation.

## COUNT V

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

## (RACIAL DISCRIMINATION)

103.    Plaintiffs reallege and reaver Paragraphs 1 through 102 of this Complaint as if fully set forth herein

104.    Plaintiff realleges and reavers Paragraphs 1 through 75 of this Complaint as if fully set forth herein.

105.    The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

106.    Plaintiff, WILLIAM ANDERSON, is an employee and a qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

107.    Defendants operated a business in New York City that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of constant harassment and unequal treatment due to his race. Such discriminatory conduct by Defendants directly led to Plaintiff's termination by Defendants.

108.    Due to Defendants' violations under the New York City Human Rights Law, as amended, based on discrimination on the basis of race, Plaintiff is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, (3) damages for retaliation, and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the New York Labor Law, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

d.   An award of unpaid hours worked due to a corporate-wide policy of time-shaving due under the FLSA and the New York Labor Law;

e.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

f.   An award of unpaid uniform expenses due under the FLSA and the New York Labor Law;

g.   An award of unpaid gratuities due under the FLSA and the New York Labor Law;

h.   An award of damages, retroactive to the date of their discharge and prior, for all lost wages and benefits, past and future, back and front pay, resulting from Defendants' unlawful employment practices and to otherwise make the, whole for

any losses suffered as a result of such unlawful employment practices under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law;

i.      An award of statutory penalties, and prejudgment and postjudgment interest;

j.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

k.      Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

l.      Designation of this action as a class action pursuant to F.R.C.P. 23;

m.      Designation of Plaintiffs as Representative of the Class; and

n.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: 12/7/2017

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and FLSA Collective Plaintiffs*

By: _____/s/ CK Lee_____
           C.K. Lee, Esq. (CL 4086)